UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IN RE:

ANGELA K. PHILLIPS,　　　　　　　　　　　Case No. 14-21741
　　　　　　　　　　　　　　　　　　　　　　　Chapter 7 Proceeding
　　　　　　Debtor.　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/

OPINION REGARDING DEBTOR'S MOTION TO CONVERT TO CHAPTER 13

The Debtor, Angela Phillips, filed a motion to convert this Chapter 7 proceeding to a Chapter 13 proceeding. Collene Corcoran, the duly appointed Trustee to administer the Debtor's Chapter 7 proceeding, filed a response and objects to the Debtor's request for relief. The Court conducted an evidentiary hearing on January 29, 2015, which was continued to February 20, 2015, and post-hearing briefs were filed by both the Debtor and the Trustee. For the foregoing reasons, the Court conditionally grants the Debtor's motion to convert.

Procedural History

On July 30, 2014, the Debtor filed a Chapter 7 petition. On Schedule A, Debtor listed real estate located at 410 W. 12 Mile Road, Royal Oak, Michigan, ("Property") as having a value of $65,000.00, which the fair market value of the Property being based on the "purchase price and recent comparables in the area." Debtor claimed an exemption pursuant to 11 U.S.C. § 522(d)(1) in the Property on Schedule C in the amount of $3,433.00, which represents the difference between the asserted $65,000 value and the lien on the property in the amount of $61,567.00. Debtor placed a notation under the Property on both Schedules A and C, which states:

> Debtor's [sic] holds title by virtue of quit claim deed from ex-husband. This was their former marital home. After her divorce, the debtor lost her job and was forced to relocate to Midland MI. The home is now being rented out with rental payments covering mortgage loan, taxes and insurance expense.

1

Ms. Corcoran conducted a first meeting of creditors on September 3, 2014, which was continued to September 17, 2014. The Debtor appeared at the first meeting of creditors.

Thereafter, a series of amendments by Debtor to her Schedules concerning the Property ensued. On September 23, 2014, Debtor amended Schedule C to "properly exempt real estate," changing the exemption taken in the Property from Section 522(d)(1) to Section 522(d)(5).

The Trustee filed a Notice of Assets and Notice to Creditors on October 10, 2014. Debtor amended Schedules A and C on October 12, 2014, to change the exemption taken in the property back to Section 522(d)(1), and keeping the amount of the exemption the same, at $3,433.00. The Trustee filed an Objection to Debtor's exemptions one day later, on October 13, 2014. In her objection, the Trustee asserts that Debtor was not living at the Property when she filed this bankruptcy case and, thus, is not entitled to claim an exemption under Section 522(d)(1).

On November 6, 2014, Debtor amended Schedule A to change the current value of the Property from $65,000.00 to $83,000.00, indicating such value was the "FMV based on Comparative Market Analysis," and amended Schedule C to "adjust exemptions," changing the value of her claimed exemption in the Property under Section 522(d)(1) from $3,433.00 to $21,433. On December 5, 2014, Debtor again amended Schedule C, making changes unrelated to the Property.

In the middle of all of this, on October 20, 2014, the Trustee filed a Complaint to deny Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B) and (a)(4)(D), which is pending as Adversary Proceeding 14-2113. Three days later, on October 23, 2014, the Debtor filed the instant motion to convert to Chapter 13.

At the January 29, 2015, hearing, the Debtor testified, detailing that she did live at the Property, pre-petition and then moved out during the course of her divorce because she could not afford to make the mortgage payments on her own. She was out of work and between jobs for quite some time and lived with her parents in Midland, which is why this case was filed in this Court and

2

14-21741-dob    Doc 57    Filed 06/26/15    Entered 06/26/15 11:45:14    Page 2 of 8

not in the Detroit division. Debtor testified that she now is employed and lives in the Property. She rented out the Property from January 2014, to July 2014, and then extended the lease a couple of more months because the tenants could not find a place to move to relatively quickly.

At the continued evidentiary hearing on February 20, 2015, Debtor completed her testimony, detailing that she thinks she can make the payment of $340 per month and would also have some excess funds from certain variable costs such as utilities, food, and clothing. The Debtor pays $693 to the mortgage company, which includes taxes and an insurance escrow. As to how the $1,200 monthly rent payments were spent during the time when the house was rented, the Debtor paid approximately $925 per month to the mortgage company in order to cure the arrears, which left approximately $275 to cover repairs and the like. Debtor testified that she expects to get a two percent pay increase starting in April 2015 and may have additional monies available with subsequent pay increases. Moreover, although her 2014 tax refund of $2,500 will be applied to the approximate $3,200 left owed for 2013 taxes, Debtor testified that she should have a tax refund of about $2,500 per year that could be used to further fund the plan.

The Trustee's witness, Randall Roy, testified at the January 29, 2015, hearing. Mr. Roy is a realtor who was hired by the Trustee to view the Property and determine a sales price range. Mr. Roy testified that he believed the Property could sell for between $125,000 and $135,000.

Debtor's witness, Sarah Ebaugh, testified at the February 20, 2015, hearing. Ms. Ebaugh is a realtor who works in the Royal Oak office of Real Estate One. Ms. Ebaugh testified that she prepared a comparative market analysis, which suggests the Property has a value of $83,000.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate). All issues before the Court arise from Title 11 of the

United States Code are therefore within this Court's jurisdiction. *Wellness Int'l Network, Ltd. v. Sharif*, No. 13-395, 2013 WL 2456619 (U.S. May 26, 2015).

Law and Analysis

The right of a Debtor to convert from Chapter 7 to Chapter 13 may be forfeited if conversion is in bad faith. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). Prior to *Marrama*, circuits split as to whether conversion to Chapter 13 from Chapter 7 was automatic or subject to a showing of a lack of good faith. In the Sixth Circuit, conversion to Chapter 13 was subject to a showing of lack of good faith. *Copper v. Copper* (*In re Copper*), 426 F.3d 810, 814-15 (6th Cir. 2005). The Sixth Circuit has likewise instructed this Court to review a number of factors to determine "bad faith" under 11 U.S.C. § 1307, citing its prior decision in *Alt v. United States*. *Id* at 815. (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002). The *Alt* factors are:

> (1) the debtor's income:
> (2) the debtor's living expenses;
> (3) the debtor's attorney's fees;
> (4) the expected duration of the Chapter 13 plan;
> (5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
> (6) the debtor's potential for future earning;
> (7) any special circumstances, such as unusually high medical expenses;
> (8) the frequency with which the debtor has sought relief before in bankruptcy;
> (9) the circumstances under which the debt was incurred;
> (10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;
> (11) the burden which administration would place on the trustee;
> (12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

*Id* at 419.

*Alt* also directs this Court to place the burden of proof upon the party seeking dismissal to demonstrate lack of good faith. *Id*. at 420. In this case, the parties likewise agree that it is the burden of Trustee Corcoran to show that the Debtor lacks good faith.

As directed by *Alt*, this inquiry is necessarily a fact intensive endeavor. *Id*. at 419. The Court has reviewed and considered the Debtor's Schedules and Statement of Financial Affairs, as

well as the testimony of both Debtor's and the Trustee's witnesses, who both testified as to the value of the Property. The Court has also had the opportunity to review and consider the testimony of the Debtor and to observe her demeanor and mannerisms while testifying.

The Court begins with the testimony of Mr. Roy and Ms. Ebaugh concerning the value of the Property. The value of the Property is important, because such will dictate the amount of non-exempt equity that exists, which in turn must be paid by Debtor through a potential Chapter 13 plan in order to satisfy the best interests of creditors pursuant to 11 U.S.C. § 1325(a)(4). The Court found the testimony of both Mr. Roy and Ms. Ebaugh to be credible. Both offered testimony as to comparable properties, and while neither is a certified appraiser, both have substantial experience as licensed realtors. Both had sufficient information and knowledge concerning the Property to offer reasonable opinions as to its value. Thus, because the Court finds neither realtor's testimony should be given more weight, it will split the difference between the two opinions of $130,000 and $83,000 as to value, and place a value of $106,500 for the Property.

With this value of $106,500, a hypothetical liquidation analysis can be made:

| | |
|---|---|
| Sales price: | $106,500 |
| Sales costs (10%): | $10,650 |
| Net Sales Proceeds: | $95,850 |
| Less Mortgage: | ($58,335) |
| Less current exemption: | ($21,433) |
| Total non-exempt equity in Property==> | $16,082 |

Debtor and the Trustee agree that additional non-exempt equity exists in: (1) the $2,400 in post-petition rents received; and (2) $4,000 for anticipated 2014 tax refunds (using Debtor's higher number). Thus, total non-exempt equity exists in the amount of $22,482, less hypothetical Chapter 7 administrative costs of 10%, or $2,248.20, which would mean the total amount available to pay

5

creditors in a hypothetical Chapter 7 case is $20,233.80.

Debtor testified that she proposes to pay $340 per month for 60 months into a Chapter 13 plan for a total paid of $20,400. Adding to that the anticipated approximate $20,000.00 in tax refunds (estimated to be $4,000 per year for 5 years), but deducting statutory Chapter 13 trustee fees of 4 percent, or $1,616, as well as the agreed to amount of attorney fees in a Chapter 13 of $3,500, the total amount available for unsecured creditors in a Chapter 13 would be calculated as follows:

| | |
|---|---|
| Plan payments: | $20,400 |
| Tax refunds: | $20,000 |
| Less Trustee fees: | ($1,616) |
| Less attorney fees: | ($3,500) |

Total available for unsecured creditors in a Chapter 13==>$35,284

To summarize, if Debtor were to remain in a Chapter 7 and the Property were liquidated, the amount available to unsecured creditors would approximately be $20,233.80. In contrast, Debtor's hypothetical Chapter 13 plan, if confirmed would yield $35,284 to unsecured creditors over the course of 5 years.

The Court now reviews the *Alt* factors to determine if the Debtor exhibits the necessary elements of bad faith to warrant denial of her motion. The Debtor proposes to fund the Chapter 13 plan from her income. Debtor testified that her income and expenses have stabilized sufficiently to allow her to confidently propose a Chapter 13 plan with $340 monthly payments. She also testified as to her expectation to receive a two percent salary increase in April 2015, with possible subsequent pay increases. Debtor also testified as to the possibility for further adjustments to her budget to offer a viable Chapter 13 plan.

Applying the *Alt* factors to the instant case, the income from Debtor's employment appears stable. The Debtor's living expenses appear modest, and the attorney fees for the Debtor do not

6

appear to be at issue in this case and in a future Chapter 13 case, given that both Debtor and the Trustee recognize the proposed $3,500 attorney fee number as reasonable. Other elements weighing in favor of the Debtor include: her sincerity in petitioning for relief under Chapter 13; the potential for future earning and pay increases; the infrequency in which the Debtor has filed bankruptcy; and the circumstances in which the debt was incurred, which debt appears to be normal debt incurred as a result of mainly unsecured open credit over the course of years, with a small amount owing to the Internal Revenue Service for income taxes, assessments and penalties. Additionally, the offer of payment to creditors, using the Court's calculation, would be reasonable and more favorable than the proposed distribution to unsecured creditors if this case were to remain a Chapter 7. Finally, the light burden that would be placed on a Chapter 13 Trustee in administering what appears would be a straightforward Chapter 13 plan, also weighs in favor of the Debtor.

A factor against the Debtor is the expected duration of the Chapter 13 plan. Debtor wishes to stretch payments over the course of five years to her creditors. In a Chapter 13 case, creditors would have to wait for a payment over five years when there is the possibility of more readily available cash to pay these creditors if the Property can be sold relatively quickly. While this factor certainly weighs against the Debtor, the existence of one negative factor does not compel this Court to deny the Debtor's motion. This is especially true considering that this determination is to be construed liberally in favor of Debtor and keeping in mind that this issue can again be examined at confirmation, where the analysis of this factor is better addressed in this case.

Although the Court concludes that the Debtor's motion should be granted because lack of good faith has not been shown, the Court conditions the granting of this relief upon the acceptance by the Debtor of Chapter 7 administrative expenses which include, but are not necessarily limited to, attorney fees for the Chapter 7 Trustee, as well as the Chapter 7 Trustee's fees. The Court directs counsel for the Trustee and the Trustee to submit an application for fees and expenses within 21 days of this Opinion so that the Debtor may know the exact amount of these administrative costs. After these fees and costs have been determined, the Debtor may then decide if she wishes to continue her motion to convert or remain in Chapter 7.

The Court will enter an Order consistent with this Opinion.

**Signed on June 26, 2015**

                                         **/s/ Daniel S. Opperman**
                                         **Daniel S. Opperman**
                                         **United States Bankruptcy Judge**